In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-2579

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY ADAMS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 779-5 — **Sharon Johnson Coleman**, *Judge.*

———————————

ARGUED JUNE 5, 2015 — DECIDED JUNE 12, 2015

———————————

Before WOOD, *Chief Judge*, and FLAUM and EASTERBROOK, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* As part of a plea bargain, Anthony Adams pleaded guilty to conspiracy to commit armed robbery affecting interstate commerce, 18 U.S.C. §1951(a), and to possessing a firearm during and in relation to a crime of violence, 18 U.S.C. §924(c)(1)(A). Sentenced to 87 months' imprisonment, he asks us to set aside his plea and remand for a trial. His argument rests on *Rosemond v.*

*United States*, 134 S. Ct. 1240 (2014), which was decided after he entered the plea (though before he was sentenced).

*Rosemond* holds that a person cannot be convicted of aiding and abetting a violation of §924(c) unless he has enough time to drop out of joint criminal activity after learning that a confederate is armed. We stated in *United States v. Newman*, 755 F.3d 543, 547 (7th Cir. 2014), that the rules of accountability for aiding and abetting track those of conspiracy law under *Pinkerton v. United States*, 328 U.S. 640 (1946). Adams puts *Newman* together with *Rosemond* and concludes that there are new, and more stringent, rules for co-conspirator liability. But that's not what either *Rosemond* or *Newman* held; instead *Rosemond* adapted the rules of aiding-and-abetting liability to make them more like the *Pinkerton* approach to conspiracy.

The indictment charged Adams with conspiring to rob a drug stash house. Thieves think them good targets because they may hold large supplies of drugs and cash, and victims cannot report the offense to the police. But Adams was caught in a sting, proposed by an informant working with federal agents. Adams was eager to participate and did not raise an entrapment defense. Cf. *United States v. Mayfield*, 771 F.3d 417 (7th Cir. 2014) (en banc). Now, however, he rues the guilty plea and contends that he cannot be held accountable for three firearms that were in a van when he was arrested.

The plea agreement sets out the factual basis for the convictions. Adams signed this agreement and adopted its contents in open court. According to the narration, a conspirator (not the informant) took a toolbox from one van and moved it to another as part of the group's preparation for the theft. The toolbox was opened after the arrest and found to con-

tain three firearms. Adams maintains that he was not the person who moved the toolbox and did not know what it contained. But he did acknowledge, as part of the factual basis for the §1951(a) conviction, that he and the other conspirators "agreed to rob a purported stash house of at least 50 kilograms of cocaine, using firearms." Being armed thus was part of the agreement. With respect to the §924(c) conviction, Adams acknowledged that he "knowingly possessed a firearm" and that he had agreed with five other persons "to rob a purported stash house of at least 50 kilograms of cocaine, and to use firearms in furtherance of the robbery." Finally, Adams acknowledged that "in furtherance of and as a foreseeable consequence of that agreement, a toolbox containing" firearms was placed in the van.

These acknowledgments suffice to hold Adams accountable for the firearms, no matter who put the toolbox in the van and whether or not Adams knew what was in it. He conceded that the presence of firearms was a "foreseeable consequence" of his agreement to rob a stash house "using firearms." Using weapons was part of the plan. *Pinkerton* makes one conspirator liable for the foreseeable acts of others within the scope of the agreement. The provision of weapons was part of the plan, and thus within the conspiracy's scope, and what's part of a plan is foreseeable to the planners. Adams never attempted to withdraw from the conspiracy, so he is accountable for his confederates' foreseeable acts.

Nothing in *Rosemond* alters this assessment. The Court dealt with a situation in which one criminal participant unexpectedly produced a gun, and Rosemond was arrested before he had an opportunity either to assist or to walk away.

The Court held that "a defendant may be convicted of abetting a §924(c) violation only if his intent reaches beyond a simple drug sale, to an armed one." 134 S. Ct. at 1248. And whether the defendant had the necessary intent, the Court concluded, depended in part on whether he anticipated his colleague's possession of a gun. If he did, then he was culpable; if he did not, then it mattered whether he had a chance to stop assisting the criminal venture (i.e., to walk away) after learning that someone else was packing.

Adams admitted planning that one or more of the conspirators would be armed. His intent thus "reache[d] beyond a simple drug [theft], to an armed one." If this had been a prosecution for aiding and abetting, there would not have been a problem under *Rosemond*. No more is there a problem when the charge is conspiracy. It does not matter under *Rosemond*, *Pinkerton*, or *Newman*, whether Adams knew how many guns would be used, who would supply them, and whether they would come in a toolbox, a holster, a car's secret compartment, or a picnic basket; it is enough if the criminal agreement entailed use of a firearm. Adams is not entitled to withdraw his plea.

AFFIRMED