**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2174
_____

UNITED STATES OF AMERICA

v.

MAURICE QUINN,
                                        Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cr-00350-003)
District Judge:  Honorable Jan E. DuBois
_____

Argued on November 16, 2022
_____

Before: AMBRO[*], KRAUSE, and BIBAS, *Circuit Judges*

(Filed: June 21, 2023)

---

[*] Honorable Thomas L. Ambro assumed senior status on February 6, 2023.

Paul J. Hetznecker          **[Argued]**
1420 Walnut Street
Suite 911
Philadelphia, PA 19102
        *Counsel for Appellant*

Robert E. Eckert, Jr.
Bernadette A. McKeon      **[Argued]**
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

_____

## OPINION**

_____

KRAUSE, *Circuit Judge*.

On appeal of his convictions for Hobbs Act robbery, 18 U.S.C. § 1951(b)(1), and for carrying and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), Appellant Maurice Quinn contends (1) that insufficient evidence exists to sustain his convictions under both the Hobbs Act and § 924(c); (2) that the District Court erred by failing to provide Quinn's proposed accomplice-liability jury instruction for his § 924(c) charge; and (3) that the District Court erred by providing a *Pinkerton* conspiracy instruction for his Hobbs Act charge. For the reasons explained below, each argument is unpersuasive, so we will affirm.

---

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

# I. DISCUSSION[1]

## A. Sufficiency of the Evidence

Quinn first asserts that there was insufficient evidence at trial to sustain his convictions under both the Hobbs Act and § 924(c). We review the "evidence in the light most favorable to the prosecution," and will only overturn a conviction if no "rational trier of fact could have found the essential elements of [a] crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Quinn has not made the requisite showing for either conviction.

Under the Hobbs Act, a defendant commits robbery when he "knowingly and willfully" engages in an "unlawful taking . . . of personal property from the person or in the presence of another . . . by means of actual or threatened force." 18 U.S.C. § 1951(b)(1); *United States v. Stevens*, No. 21-2044, 2023 WL 3940121, at *3 n.3, 5 (3d Cir. June 12, 2023). Here, the record reflects that Quinn and co-appellants Abid Stevens and Donnie Smith disarmed the clerk of a convenience store at gunpoint, after which Quinn forced the clerk to open the register and hand over $100.[2] There is thus no question that Quinn committed a taking, and, as he actively concedes, his "actions in taking the money from the cash register following his demands to be compensated amounted to a theft." Opening Br. 19. Quinn also indisputably threatened the use of

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

[2] Co-appellants Stevens and Smith also appeal their respective convictions— *United States v. Abid Stevens* (21-2044); *United States v. Donnie Smith* (21-1384)—but we resolve those appeals separately.

physical force: The video surveillance footage in this case reveals that Quinn repeatedly shoved and shouted at the clerk, making physical contact on several occasions. Consistent with that footage, the clerk testified at trial that Quinn was "pushing [him] . . . , hitting [him] in the chest" and "trying to . . . strangl[e him]." Stevens App. 180. In sum, on this trial record, a rational juror could easily conclude that Quinn committed Hobbs Act robbery.

To find a defendant guilty of violating 18 U.S.C. § 924(c), the jury must find that the defendant, "during and in relation to any crime of violence . . . , use[d] or carrie[d] a firearm, or [] in furtherance of any such crime, possesse[d] a firearm." 18 U.S.C. § 924(c)(1)(A). Here, Quinn was the sole robbery participant who did not, himself, brandish, use, carry, or possess a weapon, thus precluding direct liability under § 924(c). But the District Court also instructed the jury on an aiding and abetting theory of liability. Under 18 U.S.C. § 2, the federal aiding-and-abetting statute, a defendant who is not directly liable under § 924(c) may nonetheless be held liable if he "(1) takes an affirmative act in furtherance of [the underlying crime of violence], (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (citations omitted). In *Rosemond*, however, the Supreme Court clarified that a defendant must also have "advance knowledge" of firearm use, defining "advance" to mean awareness "at a time the accomplice can do something with it—most notably, opt to walk away." *Id.* at 78. Critically, within that definition, the *Rosemond* Court included situations in which a "defendant continues to participate in a crime after a gun was

displayed or used by a confederate" because a "jury can permissibly infer from his failure to object or withdraw that he had such knowledge." *Id.* at 78 n.9.

Here, Quinn contends that "there is no evidence that [he] either intended, or contemplated the introduction of a firearm as reflected in the independent spontaneous acts of both Donnie Smith and Abid Stevens." Opening Br. 24. Regardless of whether that is true, however, Quinn offers no reason as to why, immediately after Smith and Stevens brandished their weapons, he could not have simply "quit the crime" by leaving the store. *Rosemond,* 572 U.S. at 78. Because Quinn instead participated in disarming the store clerk, after which he unlawfully took $100, a rational juror could conclude that Quinn had the requisite "advance knowledge" for an aiding and abetting conviction under § 924(c). So we will deny his sufficiency-of-the-evidence claim here too.

## B.     Section 924(c) Aiding and Abetting Instruction

Quinn next asserts that the District Court erred by rejecting his trial counsel's proposed "advance knowledge" jury instruction for accomplice liability under 18 U.S.C. § 924(c). While Quinn concedes that the instruction given by the District Court was based, in part, on the Supreme Court's "advance knowledge" ruling in *Rosemond*, he nonetheless argues that the version he proposed "more accurately sets forth parameters of the law as set forth by *Rosemond*." Opening Br. 28. We review objections to the wording of a jury instruction for abuse of discretion, *United States v. Gonzalez*, 905 F.3d 165, 182 (3d Cir 2018) (quotation omitted), and find none here. Simply put, Quinn fails to explain how the substance of his proposed instruction differed, in any meaningful way, from the instruction utilized by the District Court. Each instruction highlighted the

5

element of "advance knowledge"—in the District Court's formulation, a "realistic opportunity to leave the scene of the robbery," Stevens App. 1170, and in the instruction proposed by Quinn's counsel, a "realistic opportunity to quit the robbery," Opening Br. 31. Because Quinn fails to explain why this is a distinction with a difference, we deny this claim. Thus, we perceive no error in the District Court's instruction given.

### C.  *Pinkerton* **Conspiracy Liability Instruction**

Finally, Quinn asserts that, for two reasons, the District Court erred by providing a *Pinkerton* conspiracy instruction for his Hobbs Act charge. *See Pinkerton v. United States*, 328 U.S. 640, 646–48 (1946). He first argues that the absence of conspiratorial evidence should have precluded that instruction. But the District Court explicitly addressed this argument prior to charging the jury, explaining that, although the evidence of a conspiracy may have been "thin," there was at least "some evidence [from which] the Government [could] argue . . . *Pinkerton* liability." Stevens App. at 842. Quinn's counsel offered no response at trial, and again fails to address this point on appeal. Instead, Quinn chooses only to reiterate his claim that there is *no* evidence of a conspiracy. This, of course, ignores that the District Court expressly found the opposite to be true, and our review of the record confirms that finding.

In the alternative, Quinn contends that the District Court's decision to provide an aiding-and-abetting instruction for his § 924(c) charge and a *Pinkerton* instruction for his Hobbs Act charge confused the jury. Specifically, he asserts that because aiding and abetting under § 924(c) requires advance knowledge and *Pinkerton* liability does not, the

6

District Court's failure to distinguish which theory applied to which charge led to juror confusion.

This final claim fares no better. Contrary to Quinn's assertion, the District Court only gave a *Pinkerton* liability instruction when charging the jury on the Hobbs Act robbery count, and after completing its instructions for that charge, unequivocally distinguished between the two counts. In relevant part, the Court stated that it had "conclude[d] the charge on Count I, Hobbs Act robbery, including aiding and abetting Hobbs Act robbery and conspiracy," and would next "turn to Count II, which charges a separate crime . . . ." Stevens App. at 1164. Because "juries are presumed to follow a court's instructions," *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 186 (3d Cir. 2019), and nothing indicates that the jury somehow deviated from those instructions, here too there was no reversible error.

## II.    CONCLUSION

For the foregoing reasons, we will uphold Quinn's convictions and will affirm the judgment of the District Court.