[Cite as *State v. Cotton*, 2023-Ohio-46.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2022-05-055 |
| Appellee, | : | O P I N I O N<br>1/9/2023 |
| | : | |
| - vs - | : | |
| | : | |
| NATHAN COTTON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2020-08-1042

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**M. POWELL, P.J.**

{¶ 1} Defendant-appellant, Nathan Cotton, appeals his conviction in the Butler County Court of Common Pleas for aggravated robbery with a firearm specification. Finding no error, we affirm.

### I. Facts and Procedural History

{¶ 2} One day in August 2020, Hunter Carpenter posted a photo of himself on

Snapchat holding a fan of $20 bills.[1]  Later that day, Carpenter received a message from Curtis Mitchell, whom Carpenter knew from school but did not consider a close friend. Mitchell asked if he could bring his cousin over later that night to "hang out."  Carpenter agreed and gave Mitchell an address in Middletown where he would be.

{¶ 3}  Sometime after midnight, Mitchell pulled up at the address in a white Chevrolet Cruze driven by an African-American male whom Carpenter did not recognize. The car parked on the street.  Carpenter approached the car and spoke with Mitchell through the cracked-open passenger window.  Suddenly, Mitchell jumped out of the car and pointed a pistol at Carpenter, telling Carpenter that he knew he had money on him. Carpenter grabbed for the handgun and a struggle ensued.  While they were struggling, the driver of the car got out and pulled from the back seat an assault rifle.  The driver pointed the rifle at Carpenter and told him to let Mitchell go, threatening to shoot him.  When Carpenter didn't let go, the driver came up and began hammering him with the stock of the rifle.  Carpenter, deciding that it was no longer worth fighting, let Mitchell go.  The two assailants jumped in the car and fled.  After they had gone, Carpenter noticed that he was missing $260 that had been in his pants pocket.  He searched around for the money without success.  Carpenter then called the police.

{¶ 4}  Officer Lindsey Schwarber, from the Middletown Police Department, responded to scene.  Carpenter described what had happened and told her about Mitchell and the white Chevrolet Cruze in which the assailants had fled.  Officer Schwarber then drove to what Carpenter told her was Mitchell's address, about four miles away.  When she arrived, Schwarber saw a white Chevrolet Cruze parked near the house.  She found Mitchell in the passenger seat and, wedged beside him, a handgun.  An empty rifle case and two

---

1. Snapchat is an instant messaging app and service.

empty rifle magazines were found in the trunk. In the car's center console, Officer Schwarber found a driver's license bearing the name "Nathan Cotton" and a Cincinnati address. The police ran the car's plates and learned that it was registered to a "Shirley Cotton" at the same Cincinnati address as on the driver's license. Inside Mitchell's house, officers found Cotton, and in the basement, hidden under a blanket, they found an assault rifle along with an empty magazine.

{¶ 5} Detective Brook McDonald took over the robbery investigation. He interviewed Carpenter and then Mitchell. During a break in Mitchell's interview, Detective McDonald watched on the interview room's monitor as Mitchell concealed in his sock six $20 bills, which McDonald promptly seized. Cotton refused to be interviewed.

{¶ 6} Mitchell and Cotton were indicted for aggravated robbery (deadly weapon), under R.C. 2911.01(A)(1), along with a three-year firearm specification. The state alleged in a bill of particulars that Cotton had acted as either a principal offender or an accomplice to Mitchell. Mitchell pleaded guilty to the charge. But Cotton, denying that he knew about Mitchell's criminal intentions, rejected a plea deal, and proceeded to trial. At a bench trial, the state presented the testimony of Carpenter, Officer Schwarber, and Detective McDonald. After hearing all the evidence, the trial court found Cotton guilty and sentenced him to an indefinite prison term of 3 to 4 and one-half years for aggravated robbery and to a consecutive 3-year prison term for the firearm specification.

{¶ 7} Cotton appealed.

**II. Analysis**

{¶ 8} Cotton assigns three errors to the trial court. The first assignment of error challenges the sufficiency of the evidence supporting his conviction. The second challenges the admission of certain testimony from the police officers. And the third presents a claim of ineffective assistance of counsel. Taking them out of order, we begin

with the second assignment of error.

## A. Admissibility of Testimony

{¶ 9} Assignment of Error No. 2:

{¶ 10} "The trial court erred by admitting the codefendant's testimonial police statements, nontestimonial hearsay, and the detective's credibility-bolstering opinions into evidence."

{¶ 11} Cotton argues that there was inadmissible testimony given about what Mitchell said during his police interview and about the investigation. Cotton did not object to the admission of any of the challenged testimony at trial and has waived all but plain error. *State v. Tench*, 156 Ohio St.3d 955, 2018-Ohio-5205, ¶ 217.

{¶ 12} *First*, Cotton claims that Detective McDonald improperly testified about what Mitchell said during his police interview concerning the nature of his transaction with Carpenter. Cotton argues that admitting the testimony denied him the right to confrontation in violation of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), which held that the Confrontation Clause of the Sixth Amendment to the United States Constitution bars "testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford* at 53-54.

{¶ 13} On redirect, the prosecutor asked Detective McDonald:

Q. Without going into specifics of what Mr. Mitchell told you, did he ever indicate that this was a drug deal?

A. No, sir.

Q. Did he ever indicate that anyone else was involved other than him and the other male in the vehicle?

A. Just him and the other male in the vehicle.

Q. And that was Mr. Mitchell indicated that?

- 4 -

A. Yes, sir.

{¶ 14} On further redirect, the prosecutor asked the detective:

Q. Did Mr. Mitchell tell you this was going to be just a gun transaction?

A. No, sir.

Q. What did he actually tell you about what the plan was all along?

A. To do a robbery to get money for his Las Vegas vacation.

{¶ 15} While the testimony about what Mitchell said concerning the nature of his transaction with Carpenter might ordinarily be inadmissible, it was not in this case, because Cotton had opened the door to the testimony. Under the opened-the-door doctrine, "[t]he introduction of otherwise inadmissible evidence * * * ' * * * is permitted * * * "to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence."'" *State v. Bronner*, 9th Dist. Summit No. 20753, 2002-Ohio-4248, ¶ 73, quoting *United States v. Winston*, 447 F.2d 1236, 1240 (D.C.Cir.1971), quoting *California Ins. Co. v. Allen*, 235 F.2d 178, 180 (5th Cir.1956). On cross-examination defense counsel had asked Detective McDonald about his interview with Mitchell and had specifically asked the detective if the encounter between Mitchell and Carpenter was a drug deal. Counsel was apparently trying to cast what happened between them as a drug deal gone bad—a strategy ostensibly designed to establish that the incident was something other than robbery. Since Cotton had raised a question about the nature of the transaction, it was only fair that the state be allowed to ask about the matter too.

{¶ 16} What did not fit through the door that Cotton had opened, though, was Detective McDonald's testimony that Mitchell had indicated only he (Mitchell) and the "other male" were involved. Cotton contends that this testimony tended to suggest that the "other male" was a participant in Mitchell's scheme to rob Carpenter. While this testimony was

- 5 -

arguably inadmissible, we do not think that it prejudiced Cotton. The criminal implication in the testimony is rather weak. In addition, other evidence, which we will discuss later, shows that Cotton was the "other male" and was indeed a participant in the scheme. In short, any error in the admission of the "other male" testimony was harmless, as the outcome of the trial would not have been any different without it. *See* Crim.R. 52(A).

{¶ 17} *Second*, Cotton claims that Detective McDonald and Officer Schwarber improperly testified about the driver's license found in the car and about the car's registration. Cotton argues that the testimony constituted inadmissible hearsay.

{¶ 18} Officer Schwarber testified that she found a driver's license in the center console of the car with Cotton's name on it. The officer also testified that police ran the vehicle's license plate and that it came back registered to a female with the last name "Cotton." Detective McDonald testified that the vehicle was registered to "Shirley Cotton" at a Cincinnati address. He further testified that he saw the driver's license that the officer had found and that he copied the name, address, and driver's license number into his report. McDonald said that the registration address and the address on the license were the same. The state did not present into evidence either the driver's license itself or documentary evidence of the car's registration.

{¶ 19} The above testimony was not hearsay. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The challenged testimony about the contents of the driver's license and registration was not offered for the truth of the matters that either asserted. Nor did the value of the testimony rest on the credibility of the out-of-court declarants—the driver's license and registration. Rather, the testimony was offered as circumstantial evidence from which it could be inferred that Cotton had been in the car in which the license was found—a car that matched the victim's description of the

car in which the assailants had fled. Whether the information on the driver's license or in the registration was true, or whether either was valid, was immaterial. The content of the license and registration was probative, circumstantial evidence from which an inference may be properly drawn that Cotton was the "other male" with Mitchell. Again, the evidentiary value of the names and addresses was not a function of whether they were accurate or true. That Cotton's name was on the driver's license provided a circumstantial evidentiary link to his presence in the car, irrespective of the truth. *See Bentley v. Commonwealth*, Virginia Court of Appeals No. 1804-03-4, 2005 WL 1943250, *4 (Aug. 16, 2005) (holding that a handwritten CD label was not hearsay); *United States v. Ellis*, 461 F.2d 962, 970 (2d Cir.1972) (holding that a driver's license found in a coat bearing a co-conspirator's name was not hearsay because it was not offered to prove the truth of the matter asserted, i.e., that the driver's license was accurate and valid as to the codefendant; rather, the license was offered "as circumstantial evidence to show that [the codefendant] was the owner of the address book and the coat in which the * * * license [was] found"); *United States v. Day*, 591 F.2d 861, 884 (D.C.Cir.1978) (citing the analytical distinction in *Ellis*). Officer Schwarber and Detective McDonald were "merely testifying to what [they] saw," and "it was testimony regarding a fact known to [them] about which [they] could be cross-examined." *United States v. Sells*, 496 F.2d 912, 915 (7th Cir.1974) (holding that witness testimony about the name printed on a driver's license was not hearsay).

{¶ 20} The case that Cotton cites in support of his hearsay argument, *State v. Deer*, 6th Dist. Lucas No. L-06-1086, 2007-Ohio-1866, is distinguishable. In that case, the defendant was convicted of domestic violence, which required that the victim be a "family or household member," the statutory definition of which included "a person who is cohabiting, or who has cohabited with the offender within five years preceding the offense." The victim told police that the defendant did not live with her; the defendant said

that they did live together. A police officer testified that he had seen the defendant's driver's license and had noted that the address on the license was the same as that of the victim. The state did not present the driver's license itself into evidence. The appellate court agreed with the defendant that the testimony about the contents of his driver's license was hearsay. Said the court, "It is clear that the officer's testimony in this instance was hearsay, since the statement was made by someone other than the officer (in this case, the driver's license), and the state introduced the contents of the driver's license to prove the truth of the matter asserted, i.e. appellant's address." *Deer* at ¶ 20.

{¶ 21} What distinguishes *Deer* from the case before us is that in *Deer* the evidentiary value of the contents of the driver's license (the defendant's address) depended on its truth. Cohabitation was an element of the domestic-violence offense that the state had to prove, and the address on the license was offered for the truth of that matter, i.e., direct evidence that the defendant lived with the victim. Here, though, the testimony about the contents of the driver's license and registration were not offered as direct proof of an element of the charged offense. Rather, the testimony was offered as circumstantial evidence that it was Cotton who was the "other male" with Mitchell.

{¶ 22} *Third*, Cotton claims that Detective McDonald's testimony explaining why he did not order forensic testing on the rifle found in the house or the magazines improperly bolstered Mitchell's and Carpenter's credibility.

{¶ 23} The prosecutor asked Detective McDonald about forensic testing on the rifle. The detective said that he did not think it was necessary to do fingerprint or DNA testing on the recovered rifle or magazines. McDonald explained that he thought this, in part, because of what Mitchell and Carpenter had told him:

Q. Any fingerprint or DNA done on either item?

A. No, sir.

- 8 -

Q. And why is that?

A. After interviewing Curtis and the other circumstances surrounding the investigation, I did not feel it was necessary.

Q. And why did you not feel it was necessary?

A. Because Curtis's testimony that he gave me matched the evidence.

Q. What would DNA or fingerprints have shown you on a firearm?

A. It could have showed who was in possession of it.

Q. Okay. Did you have evidence as to who possessed those firearms on August 7th of 2020?

A. Just the testimony from Hunter and Curtis.

{¶ 24} Detective McDonald was not vouching for either man's credibility. His testimony was simply an explanation as to why no forensic testing was done. According to McDonald, the only reason for testing would have been to determine who had the rifle, but based on what he had learned in his investigation, which included what Carpenter and Mitchell had told him, the detective believed testing was unnecessary.

{¶ 25} There was no plain error in the admission of any of the testimony that Cotton challenges. The second assignment of error is overruled.

**B. Ineffective Assistance of Counsel**

{¶ 26} Assignment of Error No. 3:

{¶ 27} "Trial counsel was ineffective by failing to object to the codefendant's testimonial police statements, nontestimonial hearsay, the detective's credibility-bolstering opinions, and by providing incorrect sentencing advice that caused Cotton to reject a favorable plea offer."

{¶ 28} In this assignment of error, Cotton first argues that trial counsel was ineffective

for failing to object to the challenged testimony that we previously considered.

**{¶ 29}** Reversal based on a claim of ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defendant by depriving him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus.

**{¶ 30}** Based on what we have already determined regarding the challenged testimony, that defense counsel did not object to its admission does not establish a claim for ineffective assistance. Counsel arguably made a strategic decision to open the door to what Mitchell said during his police interview about the nature of the transaction with Carpenter. "It is not the role of the appellate court to second guess the strategic decisions of trial counsel. The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel." (Citations omitted.) *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 43. As for the testimony about the driver's license and registration, it would have been futile for defense counsel to object on hearsay grounds because that testimony was not hearsay. While counsel could have objected to Detective McDonald's testimony recounting what Mitchell said about the "other male," counsel's decision not to do so was harmless. Lastly, the detective's testimony about why he did not order forensic testing on the rifle and magazines did not improperly bolster other witnesses' credibility, so an objection on that ground would have been futile.

**{¶ 31}** Cotton also argues that defense counsel was ineffective for allegedly giving him erroneous advice about jail-time credit. Cotton says that he rejected a plea agreement that likely would have resulted in a shorter sentence than the one imposed because counsel had advised him that he would receive jail-time credit of 236 days against any prison

sentence, based on the time that he was held in jail in lieu of bail.[2]  However, R.C. 2929.14(C)(1)(a) required Cotton's firearm-specification prison term to be served prior and consecutive to his prison term for the aggravated robbery and R.C. 2929.14(B)(1)(b) provides that a firearm-specification prison term is not subject to reduction under any provision of R.C. Chapter 2967.  So any jail-time credit to which Cotton was entitled would not be applied until after he had completed the firearm-specification prison term.  Thus, Cotton would not be eligible for judicial release until 236 days later than he says counsel led him to believe.

{¶ 32} In support of this claim, Cotton cites a letter that he sent to the trial court.  That letter, though, is not in the record before us, as it was docketed three weeks after Cotton's notice of appeal was filed.  Therefore we may not consider it.  *See State v. Moore*, 93 Ohio St.3d 649, 650 (2001) (stating that "a reviewing court cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter").  Because the information that Cotton relies on to support his claim is outside the record, Cotton's argument is better suited to a petition for postconviction relief.

{¶ 33} Cotton has failed to establish a claim of ineffective assistance of counsel.  The third assignment of error is overruled.

### C. Sufficiency of the Evidence

{¶ 34} Assignment of Error No. 1:

{¶ 35} "There was insufficient evidence to hold Cotton liable for Aggravated Robbery (Deadly Weapon) under R.C. 2911.01(A)(1)."

{¶ 36} Cotton argues in the first assignment of error that the state failed to present

---

2. R.C. 2967.191 provides that, "The department of rehabilitation and correction shall reduce the prison term of a prisoner, as described in division (B) of this section, by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial * * *."

evidence sufficient to support his conviction for aggravated robbery—either as a principal or as an accomplice.

{¶ 37} The Ohio Supreme Court has explained well the standard of review that an appellate court should apply to a sufficiency-of-the-evidence challenge:

> An appellate court's task when reviewing whether sufficient evidence supports a defendant's conviction is well-settled and familiar. The reviewing court asks whether "'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 24, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus * * *. But it is worth remembering what is not part of the court's role when conducting a sufficiency review. It falls to the trier of fact to "'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *McFarland* at ¶ 24, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, an appellate court's role is limited. It does not ask whether the evidence should be believed or assess the evidence's "credibility or effect in inducing belief." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13 * * *. Instead, it asks whether the evidence against a defendant, if believed, supports the conviction. * * *

*State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, ¶ 16.

{¶ 38} Cotton was charged with aggravated robbery under R.C. 2911.01(A)(1), which provides that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" The relevant "theft offense" here is a violation of the theft statute. *See* R.C. 2913.01(K)(1) (defining "theft offense" to include a violation of the theft statute). The theft statute, R.C. 2913.02, relevantly provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property

or services * * * [w]ithout the consent of the owner[,] * * * [b]y threat[,] * * * [or] [b]y intimidation[.]" R.C. 2913.02(A)(1), (4), and (5). "A person acts purposely when it is the person's specific intention to cause a certain result," R.C. 2901.22(A), and "acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result," R.C. 2901.22(B). "[A]ll the elements of theft, including its mental state," are incorporated into the aggravated-robbery statute. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, ¶ 49.

{¶ 39} Ohio's complicity statute, R.C. 2923.03, pertinently provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). The definition of "aid or abet" is "'[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" *State v. Johnson*, 93 Ohio St.3d 240, 243 (2001), quoting *Black's Law Dictionary* 69 (7th Ed.1999). Accordingly, "[t]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *Id.* at the syllabus.

{¶ 40} The final element of the aggravated-robbery offense in this case is use of a deadly weapon. To establish this element for purposes of accomplice liability, the evidence must show that the defendant had foreknowledge that a deadly weapon may be used to commit the offense. *State v. Garrison*, 12th Dist. Fayette No. CA2019-08-020, 2020-Ohio-1316, ¶ 24-25, citing *Rosemond v. United States*, 572 U.S. 65, 78, 134 S.Ct. 1240 (2014).

{¶ 41} To prove an element of a charged offense the state may rely on circumstantial evidence, *Jenks*, 61 Ohio St.3d at 272-273, that is, evidence that indirectly suggests something happened but does not directly prove it. "Circumstantial evidence is the proof of

facts or circumstances by direct evidence from which [one] may reasonably infer other related or connected facts that naturally and logically follow according to the common experience of people." *Ohio Jury Instructions*, CR Section 409.01 (Rev. Aug. 17, 2011). In short, a factfinder may infer facts from other facts that have been established by direct evidence. *Id.* (defining "inference"). Accordingly, "[i]n any criminal case, * * * the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Rosemond* at 78, fn. 9. A defendant's purpose may be inferred from the surrounding circumstances. *State v. Tucker*, 10th Dist. No. 15AP-1123, 2017-Ohio-7735, ¶ 36. Similarly, "'[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971). A defendant's advance knowledge also may be inferred from the evidence: "[I]f a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge." *Rosemond* at 78, fn. 9.

{¶ 42} The Ohio Supreme Court held in *State v. Jenks* that "when the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Jenks*, 61 Ohio St.3d at 273. The Court rejected the rule that required "an appellate court to re-examine the circumstantial evidence to determine if the defendant's theory of innocence is reasonable or plausible." *Id.* at 264. This means that when the state relies on circumstantial evidence to prove an element of an offense, it does not matter if that evidence suggests a plausible alternative consistent with innocence. While there may be several conclusions that may be inferred from the circumstantial evidence, it is the factfinder's prerogative which to choose. When a court reviews the evidence for sufficiency, it does not matter which conclusions the court would have inferred from the

evidence. *Id.* at 273. Rather, because the reviewing court must view the evidence in the light most favorable to the prosecution, *id.*, it must accept the conclusions that the factfinder validly inferred from the evidence that tend to show the accused's guilt. With this in mind, we turn to the evidence presented in this case.

{¶ 43} The evidence here leaves little doubt that Cotton was the "other male" with Mitchell and that Cotton's actions facilitated the robbery. And Cotton's criminal intent can be inferred from the evidence. Cotton used his car to drive Mitchell to Carpenter's location. Cotton was in a position to see and hear what was transpiring between Mitchell and Carpenter at the scene of the aggravated robbery. At this point, instead of withdrawing from the situation, Cotton exited the vehicle and retrieved a rifle. Cotton then used the rifle to threaten and strike Carpenter, extricating Mitchell from the altercation and facilitating Mitchell's and Cotton's flight from the scene. When they arrived at Mitchell's house, Cotton took the rifle from the car and tried to hide it in Mitchell's basement. All of this evidence suggests that Cotton was trying to cover up the robbery and his complicity in the crime. Construing the evidence—Cotton's presence, his companionship with Mitchell, and his conduct during and after the robbery—in the light most favorable to the state permits an inference that Cotton facilitated the robbery knowingly and with the purpose of stealing Carpenter's money.

{¶ 44} Cotton contends that the state had to prove that he *purposefully* facilitated the robbery. But that is not the law in Ohio. The complicity statute states that an accomplice must act "with the kind of culpability required for the commission of an offense." R.C. 2923.03(A). It follows that complicity in committing a crime like murder, for example, requires proof of *purposeful* facilitation, because murder is a *purposeful* killing, that is the requisite culpable mental state is "purposely." *See, e.g.,* R.C. 2903.01(A) and 2903.02(A). But the culpable mental state for aggravated robbery in this case is "knowingly," a *knowing*

taking of property. R.C. 2913.02(A). So complicity requires proof of *knowing* facilitation. The Third Appellate District, in a case involving complicity in committing felonious assault, the culpable mental state of which is also "knowingly," "reject[ed] the theory that in order to be guilty as an aider or abettor, the complicitor must *purposely* intend to aid or abet the principal in committing the crime." (Emphasis sic.) *State v. Mendoza*, 137 Ohio App.3d 336, 344 (3d Dist.2000). We, too, reject that theory.

{¶ 45} As for the element of foreknowledge, it is true that there is little evidence showing that Cotton knew beforehand that Mitchell planned to rob Carpenter using a handgun. But Cotton's advance knowledge may be inferred from his post-robbery conduct of continuing to participate by helping Mitchell flee and trying to cover up the crime. *See Rosemond*, 572 U.S. at 78, fn. 9, 134 S.Ct. 1240.

{¶ 46} After viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find that the essential elements of aggravated robbery under R.C. 2911.01(A)(1) had been proved beyond a reasonable doubt—that Cotton knowingly, and with purpose to deprive, aided or abetted Mitchell in obtaining money from Carpenter by facilitating the commission of theft and with foreknowledge that Mitchell may use a deadly weapon.

{¶ 47} The first assignment of error is overruled.

### III. Conclusion

{¶ 48} We have overruled all the assignments of error presented. The trial court's judgment is affirmed.

PIPER and BYRNE, JJ., concur.