**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-4533**

───────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LAMAR D. PERDUE,

Defendant - Appellant.

───────────────

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Irene M. Keeley, Senior District Judge.  (1:19-cr-00019-IMK-MJA-3)

───────────────

Argued:  March 22, 2024                    Decided:  August 9, 2024

───────────────

Before WILKINSON and THACKER, Circuit Judges, and FLOYD, Senior Circuit Judge.

───────────────

Affirmed by published opinion.    Senior Judge Floyd wrote the opinion in which Judge Wilkinson and Judge Thacker joined.

───────────────

**ARGUED:**  Jenny R. Thoma, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant.  Brandon Scott Flower, OFFICE OF THE ATTORNEY, Clarksburg, West Virginia, for Appellee.  **ON BRIEF:**  William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

───────────────

FLOYD, Senior Circuit Judge:

Lamar Perdue pleaded guilty to four drug charges and one count of aiding and abetting possession of a firearm in furtherance of a drug trafficking crime. Perdue argues on appeal that his gun conviction should be vacated because the district court failed to inform him fully of the nature of that charge as required by Rule 11(b)(1)(G) of the Federal Rules of Criminal Procedure. Namely, the district court did not explain the intent element under *Rosemond v. United States*, 572 U.S. 65 (2014): One must have advance knowledge that a firearm will be used in the commission of a drug trafficking offense to be convicted of aiding and abetting such an offense. We agree with Perdue that he should have been so informed. But Perdue has not shown a reasonable probability that he would have pleaded differently had the district court correctly explained the advance knowledge requirement. We therefore affirm.

I.

In December 2018, law enforcement began investigating a residence in Fairmont, West Virginia, after receiving complaints about suspected drug dealing. Police officers in a local-federal task force searched the home's trash and found vacuum-sealed plastic bags with drug residue and sandwich bags with the corners torn off. While surveilling the house, officers observed what appeared to be hand-to-hand transactions between individuals at the residence and visitors. During a traffic stop of one such visitor, officers seized marijuana and a firearm. In another traffic stop, the driver said he had gone to the house to purchase oxycodone, but none was available. Based on all the information gathered, police obtained a search warrant for the residence, which they executed on January 31, 2019.

2

During their search of the residence, officers found three individuals inside: Lamar Perdue, Terrance Marsh, and Nicholas Mathis. Perdue, the Appellant in this case, was found trying to escape out of a second-floor bedroom window onto the roof but complied with orders to come back inside. After detaining the three men, officers searched the home and found methamphetamine, fentanyl, heroin, marijuana, and prescription pills. They also found three firearms: a Luger 9mm pistol on a coffee table downstairs, located near Marsh's belongings; a Ruger .45 caliber pistol inside a suitcase downstairs that also contained drugs; and a Mossberg .22 caliber rifle in an upstairs bedroom. In the other upstairs bedroom, which appeared to belong to Perdue, officers found a Greyhound bus ticket bearing Perdue's name, Perdue's Michigan driver's license, $431 in cash, and seventeen small bags of crack cocaine chunks. In the kitchen, officers found more cash— $18,400—and what appeared to be a drug ledger. A dozen cellphones were collected throughout the residence.

A federal grand jury returned a seven-count indictment against the three men. The indictment charged the defendants in Count One with conspiracy to possess with intent to distribute and conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii); in Count Two with aiding and abetting possession with the intent to distribute methamphetamine within 1,000 feet of a school, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 860(a); in Count Three with aiding and abetting possession with the intent to distribute heroin within 1,000 feet of a school, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); and in Count Four with aiding and abetting possession with the intent to distribute fentanyl

3

within 1,000 feet of a school, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a). The district court dismissed Counts Five and Six prior to trial upon motion of the government.

Most importantly for this appeal, the indictment alleged in Count Seven that Perdue, Marsh, and Mathis, "aiding and abetting each other, did knowingly possess a firearm, that is a Ruger, Model SR1911, .45 caliber pistol, serial number USN011; a SCCY, Model CPX-2, 9mm luger pistol, serial number 199647; a CBC Mossberg, Model 715T, .22 LR caliber rifle, serial number EMA3614641; in furtherance of a drug trafficking crime . . . ." Joint Appendix ("JA") 58.

Perdue and Mathis chose to plead guilty to all counts without a plea agreement, while Marsh went to trial. The district court conducted a joint plea hearing pursuant to Rule 11 during which the court heard testimony from a Special Agent with the Drug Enforcement Administration and asked several questions of Perdue and Mathis. The district court, in explaining what the government would have to prove under Count Seven, told Perdue and Mathis:

> [T]he government has to prove that there was a drug trafficking crime, which is, here, the conspiracy. . . . So, if they prove up the drug crimes in trial, then they would be coming in and saying [] they've used these firearms – well, whether they used them or not, they possessed these firearms in connection with those drug trafficking offenses. That's the way this links into the drugs in the case.

JA 140-41. Perdue and Mathis both said they understood. The court also explained several times, and the defendants acknowledged, that by pleading guilty to Count Seven they would be sentenced to a mandatory five-year term that would run consecutive to the

4

sentence for the drug-related counts.

The district court did not mention that under *Rosemond v. United States*, 572 U.S. 65 (2014), the government would further have to prove that the defendants had advance knowledge that a firearm would be possessed by a confederate in furtherance of the drug crimes. *Rosemond* held that a defendant must have advance knowledge of a firearm's presence or use to be convicted of aiding and abetting a § 924(c) violation. 572 U.S. at 78. But the district court did not explain that aspect of the requisite intent. Counsel did not object to the court's explanation of Count Seven.

During his colloquy with the judge, Mathis admitted to living at the searched home with Perdue and Marsh, conspiring to sell drugs with his co-defendants, and owning the Mossberg AR-style rifle, which he bought with proceeds from selling drugs. Perdue, meanwhile, made inconsistent statements about which cash found at the residence belonged to him but admitted that he had lived at the home for six months and owned the 9mm pistol found on the coffee table, as evinced by the following exchange during his plea colloquy:

> THE COURT: Okay. Now, based on your guilty pleas, are you agreeing to forfeit — forfeit any ownership or other interest you have in the three firearms that are alleged in the forfeiture allegation, and the $18,540 that is — that was seized during the search?
> PERDUE: Yes, ma'am.
> THE COURT: All right. Could you tell me what, if any, of that property you had an interest in? Did you have any interest in the cash?
> PERDUE: Yes, ma'am.
> THE COURT: Was it as testified by the special agent, the money he found in your pocket, or was there another interest?
> PERDUE: Money he found in my pocket.
> THE COURT: Okay. So of the $18,540, the stash of cash in the kitchen was not — you had no interest in that?

5

PERDUE:  No, ma'am.

THE COURT:  Whose interest — who had the interest in it?

PERDUE:  I guess the owner of the house.

THE COURT:  Okay.

PERDUE:  The person who was renting the house.

THE COURT:  Are you telling me under oath here while you're pleading guilty you don't know who — who owned that cash?

PERDUE:  Yes, ma'am.

THE COURT:  Okay. But you are admitting that you conspired to distribute this money?  Did you know by — based on the agreement, what your interest — or the drugs, did you know what your interest in the money was?

PERDUE:  (No response.)

THE COURT:  You can talk to your lawyer.

(The defendant and Mr. Rollo confer off the record.)

THE COURT:  Mr. Rollo, he has to allocute.  And I think to — he can't just say the words "to conspire."  I just need — and agree.  I need to know what that was, if he doesn't know who owns that money.

PERDUE:  It's my money.

THE COURT:  It — all of it, or some of it?

PERDUE:  All of it.

THE COURT:  All of the $18,540 was yours?

PERDUE:  Yes, ma'am.

THE COURT:  Okay. And how did you become the owner of that money?

PERDUE:  By selling drugs.

THE COURT:  Okay.  So was any of that money Mr. Mathis's?

PERDUE:  No, ma'am.

THE COURT:  Was any of that money Mr. Marsh's?

PERDUE:  No, ma'am.

THE COURT:  All right.  Mr. Mathis said he was selling drugs in the house, too.  Was he?

PERDUE:  Yes.

THE COURT:  He was.  So under your agreement with him, was he entitled to any of that money?

PERDUE:  Yes, ma'am.

THE COURT:  All right. But, at that time, you considered it all yours?

PERDUE:  Yes, ma'am.

THE COURT:  What about the firearms?  Were you the owner or possessor of the Ruger?

PERDUE:  No, the Luger 9mm.

THE COURT:  The Ruger pistol, handgun.

PERDUE:  The 9mm.

THE COURT:  Okay.  The 9mm.  You owned the Ruger [sic].  Okay.  What about the Mossberg?

6

PERDUE:  No, ma'am.
THE COURT:  Do you know who owned the .45 caliber Ruger?
PERDUE:  No, ma'am.

JA 185-88.

Later, Marsh (the defendant who did not plead guilty) at his own trial moved to admit the above exchange as tending to exculpate Marsh.  But the government objected, and the district court did not admit the testimony because of its lack of trustworthiness under *United States v. Bumpass*, 60 F.3d 1099 (4th Cir. 1995).  Perdue's statements were inconsistent and "evinces [Perdue's] propensity to lie and a motive to lie . . . to protect his co-defendants."  JA 242-44.  At Marsh's trial, he was found guilty of Count Seven on the basis of the Luger 9mm—the same gun that Perdue had purportedly admitted to owning. The district court excluded the other two firearms because the government could not satisfy the advance knowledge requirement of *Rosemond*.

Following the plea allocutions with Perdue and Mathis, the district court found they knowingly and voluntarily pleaded guilty, accepted their pleas, and adjudged them guilty. At Perdue's sentencing hearing in September 2019, the court inquired if he had received and reviewed the pre-sentence report ("PSR").  Perdue said he had received the PSR, reviewed it, and had no objections to its contents.  Perdue's counsel argued for a downward variance, noting that Perdue was a 20-year-old, first-time offender with no criminal history, but the court rejected the request.  The PSR grouped Counts One through Four together, and the court applied to those counts a credit for acceptance of responsibility, reducing the offense level.  The court sentenced Perdue to 135 months of imprisonment—the low end of the guideline sentence range—each for Counts One through Four, to run concurrently.

7

The court sentenced the defendant to 60 months of imprisonment for Count Seven, to be served after the sentence imposed for Counts One through Four, for a total sentence of 195 months (or just over 16 years). A conviction on Count Seven meant that Perdue, who had zero criminal history points, was also no longer "safety-valve" eligible under 18 U.S.C. § 3553(f). That statute provides relief from certain mandatory minimum sentences when various criteria are met.[1]

A year after sentencing, in September 2020, Perdue filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Perdue raised several grounds, including the failure of his trial counsel to pursue an appeal after sentencing. The district court granted Perdue's motion on the sole ground that his trial counsel had failed to seek an appeal. In September 2022, the court entered an amended judgment permitting Perdue to seek this appeal, but the court did not alter his original sentence.

In connection with those post-conviction proceedings, Perdue's trial counsel filed an affidavit stating that Perdue alone made the decision to plead guilty to all counts of the indictment without the benefit of a plea agreement. Counsel said he told Perdue "the benefits and disadvantages of pleading straight up to the indictment" and that he was "prepared to represent him at trial." JA 305. Counsel encouraged Perdue to consider accepting a plea agreement, but Perdue "made clear to me that he would not consider a plea agreement that required his cooperation against other co-defendants." JA 305. Perdue

---

[1] For example, a defendant is not safety-valve eligible if he has a prior three-point criminal offense or possessed a firearm in connection with the offense. 18 U.S.C. § 3553(f); *Pulsifer v. United States*, 144 S. Ct. 718, 723 (2024).

did inform his counsel, however, that "none of [the] firearms were his." JA 305. Perdue nevertheless took responsibility for the 9mm Luger pistol at his plea hearing, which counsel said he did not "coerce or force" him to do. JA 305.

## II.

This court reviews alleged errors not noticed below using a plain error standard. *United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Heyward*, 42 F.4th 460, 465 (4th Cir. 2022). Under this standard, a defendant carries the burden to show "(1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights." *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020). To satisfy this third condition, the defendant ordinarily must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles v. United States*, 585 U.S. 129, 134–35 (2018) (cleaned up). We have the discretion to correct such an error but will do so only when the error "seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Lockhart*, 947 F.3d at 191.

## III.

We first consider whether the district court erred in failing to explain the government's burden of proving advance knowledge under *Rosemond*. We then consider whether this omission amounted to plain error that affected Perdue's substantial rights.

## A.

Prior to accepting a guilty plea, the district court must conduct a colloquy in which it ensures the defendant understands "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). While the district court is not required to follow

a "script" or "recite the elements of the offense in every circumstance," *United States v. Wilson*, 81 F.3d 1300, 1307 (4th Cir. 1996), the court must nevertheless ensure that a defendant understands "the essential elements of the offense to which he pleads guilty," *Lockhart*, 947 F.3d at 196.

To aid and abet the § 924(c) offense of possessing a firearm in furtherance of a federal drug-trafficking offense, a defendant must have "advance knowledge" of a firearm's presence. *Rosemond*, 572 U.S. at 80. "When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense." *Id.* at 78. Perdue argues that the district court erred in failing to apprise him of the government's burden on this element before he pleaded guilty. In *Rosemond*, the district court failed to explain the intent element in the context of instructing the jury. Perdue argues that a judge must similarly explain the government's burden in the context of a Rule 11 plea hearing, analogizing to *Rehaif v. United States*, 588 U.S. 225 (2019), and *Greer v. United States*, 593 U.S. 503 (2021). *Rehaif* held that, for felon-in-possession prosecutions, the government must prove not only that the defendant knew he possessed a firearm but also that he knew he was a felon when he possessed the firearm; *Greer* applied the same holding in the context of a Rule 11 plea colloquy.

The district court below never mentioned *Rosemond* or its advance knowledge requirement when explaining what the government would have to prove at trial. Instead, the judge said generally that "the government has to prove that there was a drug trafficking

10

crime, which is, here, the conspiracy" and that the defendants "possessed these firearms in connection with those drug trafficking offenses." JA 140.

We agree with Perdue that the district court erred. The advance knowledge requirement was an essential element of the charge that Perdue needed to understand before pleading guilty. We also agree that the error was "plain" since *Rosemond* was decided five years prior to Perdue's plea hearing. *See United States v. Ramirez-Castillo*, 748 F.3d 205, 215 (4th Cir. 2014) (error is plain, meaning "clear" or "obvious," if "settled law of the Supreme Court or this circuit establishes that an error has occurred").

The government counters that Perdue was charged with and convicted of Count Seven as a principal and that the evidence supports his liability as a principal. The government asserts that the indictment charged all three defendants as both principals and as aiders and abettors, using alternative theories of liability, so "the court need only be satisfied that the evidence was sufficient to prove one theory." Br. 16. The text of Count Seven in the indictment read:

> COUNT SEVEN
> (*Aiding and Abetting* Possession of Firearm in Furtherance of Drug Trafficking Crime)
> On or about January 31, 2019, in Marion County, in the Northern District of West Virginia, defendants TERRENCE D. MARSH, NICHOLAS J. MATHIS, and LAMAR D. PERDUE, *aiding and abetting each other, did knowingly possess* a firearm, that is a Ruger, Model SRI 911, .45 caliber pistol, serial number USN0l l; a SCCY, Model CPX-2, 9mm luger pistol, serial number 199647; a CBC Mossberg, Model 715T, .22 LR caliber rifle, serial number EMA3614641; in furtherance of a drug trafficking crime . . . .

JA 58 (emphasis added).

The government argues that the "aiding and abetting" phrase is mere "surplusage"

11

and not unusual in conspiracy cases like this.  Br. 17.  The important part of the charge, the government says, is the "did knowingly possess a firearm" language.  If the defendants were charged as principals—meaning they actually or constructively possessed the firearms—then *Rosemond*'s advance knowledge requirement would not apply.  In support, the government cites a Sixth Circuit case from 2001 that found similar "aiding and abetting" language did not preclude a principal liability theory since the aiding and abetting language was "contained in a subsidiary clause that was not essential to the viability of [the count]."  *United States v. Price*, 258 F.3d 539, 546-47 (6th Cir. 2001).  The government also argues that "[t]he district court did not need to concern itself with the *Rosemond* elements of aiding and abetting since the defendant possessed the 9mm luger pistol," which he admitted later in the plea hearing.  Br. 21-22.

The government is mistaken.  First, the district court *did* need to concern itself with the requirements of *Rosemond* since the defendants were charged under an aiding and abetting theory, and Perdue's admission regarding his ownership of the 9mm Luger pistol came much later in the hearing and, more importantly, did not absolve the court of its duty to inform the defendants regarding what the government would have to prove at trial. Second, the district judge described Count Seven to the defendants as "aiding and abetting possession of a firearm in furtherance of a drug trafficking crime," which is exactly what the indictment says beneath the heading "Count Seven."  The court asked Perdue, "And as to Count Seven, how do you plead to the charge of *aiding and abetting* possession of a firearm in furtherance of a drug trafficking crime . . . ?"  JA 185 (emphasis added).  Perdue responded, "Guilty."  JA 185.  Perdue's Judgment and Commitment Order also stated that

12

he was convicted of "Aiding and Abetting Possession of Firearm in Furtherance of Drug Trafficking Crime." JA 344.

It is true that the government at trial could have satisfied its burden by showing, alternatively, that Perdue acted as a principal gun possessor rather than an aider and abettor. But, as alleged in the indictment, Perdue was charged as an aider and abettor. That is what he pleaded guilty to and what he was convicted of. Under that theory of liability, the government would have to prove advance knowledge of a firearm's presence, and the district court was required to so inform Perdue. Accepting the government's argument would ignore both the language of the indictment and the content of Perdue's Rule 11 hearing.

B.

We now turn to the remaining components of plain error review. Although Perdue has demonstrated that an error has occurred and the error was plain, he must still show a reasonable probability that, properly informed of the advance knowledge requirement, he would not have pleaded guilty. *See Rosales-Mireles*, 585 U.S. at 134–35. Even then, our power to correct such an error is discretionary and only wielded when the error "seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Id.* at 135.

Perdue argues on appeal that he had good reason to not plead guilty to Count Seven and to instead put the government to its burden at trial. He notes that Count Seven came with a mandatory consecutive five-year sentence and made him safety-valve ineligible under 18 U.S.C. § 3553(f). In addition, he argues there was no evidence connecting him to any of the three firearms, which were not found in Perdue's bedroom or near Perdue and

13

which were located nearby his co-defendants' personal possessions. He argues the government offered no evidence that Perdue knew about any of the three firearms. The government did not, for instance, offer evidence as to how long the Luger pistol had been sitting on the coffee table or whether Perdue went downstairs and saw it at some point. His fingerprints were not found on any of the guns.

As to Perdue's purported admission of gun ownership in his colloquy with the judge (Court: "What about the firearms? Were you the owner or possessor of the Ruger?" Perdue: "No, the Luger 9mm"), Perdue offers several arguments in response. First, he implies that he was lying to protect his co-defendants. His counsel on appeal points to the fact that he made inconsistent statements about the ownership of the cash, and those statements were not admitted in the subsequent trial of co-defendant Marsh because they were deemed unreliable. Second, Perdue notes that Marsh was tried and found guilty of Count Seven on the basis of the Luger 9mm—the same gun that Perdue had purportedly admitted to owning.[2] Third, Perdue argues that his statement regarding the pistol "did not admit *any* gun crime" since he "had no criminal history or felony convictions, and was thus *legally* able to both own and possess a pistol." Br. 22. And Perdue "did *not* say that he possessed the Luger in furtherance of the drug counts, or that he knew in advance that anyone else would." Br. 22.

---

[2] As the government rightly notes, Br. 23-24, Perdue's and Marsh's convictions are not inconsistent. If one defendant (Perdue) owns a gun and possesses it in furtherance of a drug conspiracy, and another defendant (Marsh) knows about his co-conspirator's gun possession but continues with the drug crime anyway, they can both be convicted of aiding and abetting a § 924(c) offense.

This parsing ignores the other points in the plea colloquy in which Perdue acknowledged that he was pleading guilty to possession of a firearm in furtherance of the drug conspiracy. The judge explained that "with regard to the elements of Count 7," the government has to prove not only that they engaged in a drug conspiracy but also that they "possessed these firearms in connection with those drug trafficking offenses." JA 140. The judge then asked, "Do you understand that, Mr. Perdue?" to which Perdue replied, "Yes, ma'am." JA 141.

What's more, Perdue's arguments on appeal do not strictly concern the mens rea for aiding and abetting. Rather, he points to a purported lack of evidence tying him to the three seized firearms generally. Perdue stresses that none of the guns was found near him or in his room, and none had his fingerprints on them. But Perdue does not specifically argue that he did not know ahead of time that firearms would be used or possessed in connection with drug trafficking—a contention that would be difficult to support given Perdue's admission during his plea hearing that he had lived in the West Virginia home for six months to sell drugs. *See United States v. Gelzer*, 829 F. App'x 562, 566 (2d Cir. 2020).

The facts of this case are unlike those of *Rosemond*, where the issue of advance knowledge was front and center. That case involved "a drug deal gone bad" in which one co-conspirator pulled out a gun and fired several shots at would-be marijuana customers who stole their drugs. *Rosemond*, 572 U.S. at 67. "[W]hen an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime." *Id.* at 78. Here, at least one gun was lying in plain view, albeit not in the same room where

15

officers located Perdue.  It is difficult to imagine how an additional explanation for Count Seven's intent element would have changed Perdue's plea.

Perdue has not demonstrated a reasonable probability that, properly informed of *Rosemond*'s advance knowledge requirement, he would not have pleaded guilty to Count Seven.  Perdue made a voluntary decision to plead straight up to the indictment.  Perdue rejected his counsel's advice to consider accepting a plea agreement because he did not want to cooperate against his co-defendants.  The district court and Perdue's counsel both explained to him in detail the consequences of his decision to plead guilty and explained the alternatives of pursuing a plea deal or going to trial.  The court also explained that Count Seven came with a mandatory five-year term that would run consecutive to the sentence on the drug counts.  Thus, despite the court's error in omitting the intent element of *Rosemond*, Perdue has not shown a reasonable probability that, but for the error, he would not have pleaded guilty to Count Seven.  We therefore affirm the judgment of the district court.

*AFFIRMED*

16