*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER TILLIMAN,

Defendant-Appellant.

UNPUBLISHED
December 10, 2025
1:49 PM

No. 365758
Wayne Circuit Court
LC No. 22-001955-02-FC

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of second-degree murder, MCL 750.317, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 25 to 50 years' imprisonment for second-degree murder and two years' imprisonment for felony-firearm. Defendant was convicted under an aiding and abetting theory, with codefendant Levertis Riley being the principal perpetrator of the murder. For the reasons that follow, we affirm defendant's convictions but remand for resentencing on the conviction for second-degree murder.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises from the fatal shooting of Topreze Jackson on June 18, 2021, at the apartment of his girlfriend, Quanetta Ware. Quanetta knew Riley since she was a child, and they had been in a dating relationship in the past. She knew defendant through Riley. That morning, she left Jackson and two of her children in her apartment to talk to her cousin, Dasha Ware, in the parking lot. Her eldest son was with her. Quanetta's daughter, JB, was in the apartment when two men entered, wearing ski masks. Despite the masks, she was able to recognize one of the men as Riley. The men walked toward the bedroom where Jackson was, and JB saw Riley enter. Then she heard gunshots, and ran outside. Quanetta and Dasha heard the gunshots from the parking lot. They both saw two men run out of the apartment. Quanetta recognized the men as Riley and defendant, even with their faces partially concealed. Quanetta ran back upstairs to her apartment, and discovered Jackson with gunshot wounds. She called 911, and Jackson was taken to the hospital, where he ultimately died.

-1-

Police obtained surveillance camera footage capturing defendant and Riley at the apartment complex and at Riley's place of employment earlier that day. The vehicle in the footage matched defendant's Buick Park Avenue. After a search warrant was executed at his home, defendant was arrested and interviewed by police. His interrogation video was played for the jury. He initially lied to the police, and told several different stories of what he claimed occurred on the day of the shooting. After the police told defendant they knew he was present when the crime was committed, defendant changed his story. He admitted that he gave his gun to Riley the day before the shooting. He also admitted to picking Riley up from work the morning of the shooting, and driving him to Quanetta's apartment. Defendant knew Riley had his gun at the time. Defendant claimed Riley told him that he was not going to shoot anyone, but that he intended to confront and physically assault Jackson. When they arrived at the apartment complex, defendant followed Riley upstairs, heard the gunshots, then ran out after Riley. Defendant then drove Riley away from the scene. Defendant admitted to falsely reporting his gun as stolen the day after the shooting, and changing his cell phone number within a few days.

Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), first-degree felony murder, MCL 750.316(1)(b), first-degree home invasion, MCL 750.110a(2), second-degree home invasion, MCL 750.110a(3), and three counts of felony-firearm, MCL 750.227b. Defendant and Riley were tried together before separate juries. The trial court declared a mistrial in Riley's case because of a hung jury. Defendant's jury, however, convicted defendant of second-degree murder and the corresponding felony-firearm charge. Upon being retried, Riley was acquitted of murder and convicted of only felony-firearm and felon-in-possession.

II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to support his conviction of second-degree murder under a theory of aiding and abetting. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence to support a conviction, "meaning that the appellate court provides no deference to the lower court's determination." *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024). This Court must review the evidence in a light most favorable to the prosecution to determine whether the trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id*. at 385. This Court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. (quotation marks and citation omitted). Thus, "reversing a guilty verdict on the basis that there was insufficient evidence is a high bar to overcome." *Id*. at 384-385.

Defendant was convicted under MCL 750.317, which provides: "All other kinds of murder shall be murder of the second degree, and shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying same." Historically, the elements of second-degree murder were: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Wafer*, 509 Mich 31, 40; 983 NW2d 315 (2022) (quotation marks and citation omitted). This Court clarified that the fourth "element," without justification or excuse, is actually "part of the 'cluster of ideas' of second-degree murder. It is not an element of the offense of second-degree murder." *People v Spears*, 346 Mich App 494, 517; 13 NW3d 20 (2023). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of a crime, and it does not matter that the evidence gives rise to

multiple inferences or that an inference gives rise to further inferences." *People v Walker*, 330 Mich App 378, 382; 948 NW2d 122 (2019) (quotation marks, brackets, and citations omitted).

Defendant was convicted of second-degree murder under a theory of aiding and abetting. A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. MCL 767.39. To convict a defendant as an aider and abettor, the prosecution must prove:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks and citation omitted; alteration in original).]

The prosecution may also prove the charged offense under a theory of aiding and abetting if "the charged offense was a natural and probable consequence of the commission of the intended offense." *Id.* at 15. " 'Aiding and abetting' describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime . . . ." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v Lawton*, 196 Mich App 341, 352; 492 NW2d 810 (1992). The state of mind of an aider or abettor may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, and the defendant's participation in the planning or execution of the crime. *Carines*, 460 Mich at 758.

Here, the evidence was sufficient to convict defendant of second-degree murder as an aider or abettor. The evidence established that Riley committed second-degree murder by shooting Jackson multiple times, causing his death. The testimony of JB, Quanetta, and Dasha identified Riley as one of the perpetrators at the apartment, and the reasonable inference drawn from defendant's statements was that Riley was the shooter. This satisfies the requirement that "the crime charged was committed by the defendant or some other person." *Robinson*, 475 Mich at 6 (quotation marks and citation omitted). Although both parties indicate Riley was ultimately acquitted of any murder charges, "the conviction of a principal is not necessary for the conviction of a party aiding and abetting." *People v Wilson*, 196 Mich App 604, 609; 493 NW2d 471 (1992).

The evidence was also sufficient to establish that defendant performed acts or gave encouragement that assisted the commission of the crime. *Robinson*, 475 Mich at 6. It is true that a defendant's mere presence is insufficient to establish that he aided and abetted the commission of a crime, even if he had knowledge that an offense was about to be, or is being, committed. *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). Defendant argues he was merely present when Riley shot Jackson; however, the evidence establishes more than mere presence. Defendant admitted giving Riley his gun in the days leading up to the murder. Although Riley gave defendant other reasoning for wanting the gun, i.e., something had occurred with his son, defendant never took it back. Rather, defendant drove Riley to the scene of the crime, even after learning they were going to Quanetta's apartment, knowing that Riley intended to confront Jackson while armed. When they arrived at the apartment complex, defendant parked where Riley

-3-

directed. He called Quanetta's eldest son when Riley told him to call. Defendant exited the vehicle and followed Riley up to the apartment. Eyewitnesses testified that defendant and Riley were wearing ski masks; defendant told the police he had the hood of his sweatshirt on and pulled up and tied to cover his face. After the shooting, defendant drove Riley away, hid his Buick in his garage, reported his gun stolen, and changed his phone number.

The evidence was also sufficient for a rational trier of fact to conclude that defendant either intended to murder Jackson or had knowledge that Riley acted with the requisite malice. In the context of second-degree murder, "malice" is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Spears*, 346 Mich at 514 n 10 (quotation marks and citation omitted). Malice may be inferred from the facts in evidence and by the use of a deadly weapon. *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Although Riley told defendant he was not going to shoot anyone, he specifically told defendant that he intended to physically assault Jackson, and defendant knew Riley was going to do this while armed with a dangerous weapon.

Defendant argues that this was insufficient to establish the third element of aiding and abetting, i.e., that defendant intended the commission of the murder or had knowledge that Riley intended its commission at the time defendant gave Riley aid. *Robinson*, 475 Mich at 6. Defendant again relies on the fact that Riley told him he did not intend to shoot anyone, and defendant did not know what "the plan" was. Given the circumstantial evidence, however, it was reasonable for the jury to disbelieve defendant and infer that he knew Riley planned to shoot and kill Jackson at the time of the crime. The evidence established that defendant gave Riley his gun, drove Riley to Quanetta's apartment knowing Riley had conflict with Jackson, and proceeded to follow Riley into the apartment while covering his face. These actions are consistent with defendant having knowledge that Riley intended to murder Jackson. *Id*.

Moreover, aiding and abetting can also be proven if "the charged offense was a natural and probable consequence of the commission of the intended offense." *Id*. at 15. Under this theory, "there can be no criminal responsibility for any thing [sic] not fairly within the common enterprise, and which might be expected to happen if the occasion should arise for any one to do it." *Id*. at 9 (quotation marks, brackets, and citation omitted). The *Robinson* Court held that "a natural and probable consequence of a plan to assault someone is that one of the actors may well escalate the assault into a murder." *Id*. at 11. Thus, despite Riley's statements to defendant that he was not going to shoot anyone, defendant was aware that Riley intended to confront Jackson and engage in a physical altercation while armed with a firearm. Like the defendant in *Robinson*, here, defendant "did nothing to protect [Jackson] and he did nothing to defuse the situation in which [Jackson] was ultimately killed by [Riley]." *Id*. at 12. Thus, it was a natural and probable consequence that a shooting could occur, and the evidence was sufficient to establish the last requirement of aiding and abetting. Accordingly, the evidence was sufficient to support defendant's second-degree murder conviction.

III. SENTENCING

Next, defendant argues that he was improperly scored points for offense variables (OVs) 1 and 2. Although the parties focus on OV 1, because defendant preserved his challenge regarding OV 2 only, and reducing the scoring of OV 2 by five points changes his guidelines range, he is entitled to resentencing.

To preserve a challenge to the scoring of the sentencing guidelines, the challenge must be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed with this Court. MCR 6.429(C); *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016). Defendant acknowledges that this issue is preserved only in relation to OV 2 because defense counsel objected to the scoring of OV 2 at sentencing. He concedes that counsel did not object to the scoring of OV 1.

Regarding defendant's preserved argument related to OV 2, the trial court's findings of fact under the sentencing guidelines are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (quotation marks and citation omitted). This Court reviews de novo whether the facts, as found by the trial court, are adequate to satisfy the scoring conditions under the statutes. *Anderson*, 322 Mich App at 634. When calculating the sentencing guidelines, the court may consider all record evidence. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). The interpretation and application of the sentencing guidelines, MCL 777.1 *et seq.*, are legal questions reviewed de novo. *People v Dupree*, 511 Mich 1, 5; 993 NW2d 185 (2023).

Defendant's unpreserved argument regarding the scoring of OV 1 is reviewed for plain error affecting defendant's substantial rights. *Anderson*, 322 Mich App at 634. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. An error affects substantial rights when it "affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, brackets, and citation omitted).

OV 1 contemplates the aggravated use of a weapon during the commission of a crime. MCL 777.31(1). Under MCL 777.31(1)(a), 25 points are assessed for OV 1 if a "firearm was discharged at or toward a human being." The instructions for OV 1 provide that "[i]n multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." MCL 777.31(2)(b). OV 2 relates to the "lethal potential of the weapon possessed or used." MCL 777.32(1). Five points are assessed if "[t]he offender possessed or used a pistol." MCL 777.32(1)(d). The instructions for OV 2 also provide that, "[i]n multiple offender cases, if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points." MCL 777.32(2).

This Court recently addressed the scoring of OVs 1 and 2 in multiple-offender cases. *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 9-11. The *Ventour* Court concluded that the statutory language requires that points assessed to

one offender in a multiple-offender case "shall be assessed" to all defendants, and although a sentencing court cannot factor acquitted conduct into its sentencing calculation, an increase to one defendant's sentence may be predicated on a codefendant's conduct. *Ventour*, ___ Mich App at ___; slip op at 9-10. The facts of *Ventour* are distinguishable from this case, however, because in *Ventour*, the defendant was acquitted of felony-firearm, but this Court upheld his scores for OVs 1 and 2 based on his codefendants' conduct. *Id*. at ___; slip op at 10-11.

Defendant was assessed five points for OV 2. At sentencing, defense counsel argued that OV 2 should be scored zero points. He explained that, under OV 2, in multiple-offender cases, if one offender is assessed points for possessing a weapon, all offenders must be assessed the same number of points. However, Riley had not yet been sentenced, so Riley had not been assessed points for OV 2, and the evidence at trial established defendant did not use or possess a gun. The prosecution responded that there was evidence that Riley possessed a gun and there was no requirement that Riley be convicted for points to be assessed to defendant. Alternatively, the prosecution argued that there was evidence that defendant possessed a firearm and gave it to Riley to use in the murder, so the five points were proper. The trial court stated that it agreed with the prosecution and that OV 2 was properly scored. The parties essentially repeat the same arguments on appeal.

As discussed above, defendant was convicted of second-degree murder under an aiding and abetting theory. MCL 767.39. He aided and abetted Riley in the murder of Jackson, in part, by providing Riley with the gun later used in the shooting. However, the assessment of five points under OV 2 was erroneous. In *Dupree*, 511 Mich at 4, the defendant and two accomplices robbed a store, and only one of the three was armed. The defendant was the only person charged and convicted of armed robbery, but there was no contention that he had been the robber wielding the gun. *Id*. at 5. The Supreme Court held that "[b]ecause there is no contention that defendant possessed a weapon *during the offense at issue*, and because no other offender was assessed points for either [OV 1 or OV 2], both offense variables should have been scored at zero points." *Id*. at 4 (emphasis added).

Here, there is no contention that defendant possessed a gun at the time the offense was committed. Although he admitted that the gun used was his, he had given it to Riley the day before. There is no contention or evidence to suggest that defendant regained possession of the gun again after that point. Defendant maintained that Riley had his gun when defendant picked Riley up from work, when defendant drove Riley to Quanetta's apartment complex, when they entered the apartment, and when they got back into defendant's car and left the scene. Thus, there was no evidence that defendant "possessed or used a pistol" during the commission of the crime to be assessed points, MCL 777.32(1)(d), and because Riley was acquitted of murder and not assessed points for OV 2, defendant could not be assessed points in a multiple-offender situation under MCL 777.32(2).

Defendant's total OV score was 100 points, placing him in OV Level III. MCL 777.61. With his prior record variable (PRV) score being 10 points, placing him in Level C, his sentencing guidelines range was 225 to 375 months' imprisonment or life, or 18.75 to 31.25 years. *Id*. Subtracting five points for OV 2 lowers his total OV score to 95 points, placing him in Level II. *Id*. This decreases his sentencing guidelines range to 180 to 300 months' imprisonment or life, or

15 to 25 years. *Id*. Defendant's minimum term, 25 years, is still within the corrected guidelines range, although now at the high end of the range rather than in the middle. *Id*.

In *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006), the Michigan Supreme Court held that the defendant was entitled to resentencing when the trial court erred in scoring the sentencing guidelines, and the defendant's original sentence was within the appropriate, rescored guidelines range. The Supreme Court remanded that case for resentencing because an appellate court cannot know whether the trial court would have imposed the same sentence had the guidelines been properly scored. *Id*. at 91-92. "[A]ppellate correction of an erroneously calculated guidelines range will always present this dilemma, i.e., the defendant will have been given a sentence which stands differently in relationship to the correct guidelines range than may have been the trial court's intention." *Id*. at 91-92. As such, "requiring resentencing in such circumstances not only respects the defendant's right to be sentenced on the basis of the law, but it also respects the trial court's interest in having defendant serve the sentence that it truly intends." *Id*. at 92. Notably, the defendant in *Francisco* preserved the sentencing issue by raising it at sentencing. *Id*. at 89.

Defendant's challenge to OV 2 is preserved because he raised it at sentencing. Because the trial court erred in its assessment of points under OV 2, and a reduction of five points changes defendant's sentencing guidelines range, MCL 777.61, he is entitled to resentencing. *Francisco*, 474 Mich at 91-92. We therefore vacate defendant's second-degree murder sentence and remand for resentencing.[1]

## IV. GREAT WEIGHT

Defendant also argues that his second-degree murder conviction under a theory of aiding and abetting was against the great weight of the evidence. We disagree.

A defendant must move for a new trial in the trial court and argue that a jury verdict is against the great weight of the evidence to preserve the issue on appeal. *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). Although defendant moved for relief from judgment in the trial court, his motion was titled a "motion for discovery," and his arguments related to an alleged *Brady*[2] violation and judicial bias. Defendant's appellate counsel concedes that because defendant did not move for a new trial, this issue is unpreserved. As such, our review is limited to plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 763-764.

A new trial may be granted if the verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Anderson*, 322 Mich App at 632 (quotation marks and

---

[1] Because defendant is entitled to resentencing, we need not address his challenge regarding OV 1. Defendant is free to raise his challenge to OV 1 in the trial court on remand, and we note that the prosecution concedes that OV 1 was improperly scored.

[2] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

citation omitted). A verdict is against the great weight of the evidence "only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). It is up to the jury to determine questions of fact and to assess the credibility of witnesses, to which this Court must defer. *Anderson*, 322 Mich App at 632.

Defendant's great-weight argument on appeal echoes his sufficiency argument in that he again asserts that he lacked the requisite intent to be convicted of second-degree murder as an aider or abettor. As stated above, the elements of second-degree murder are a death, caused by an act of the defendant, with malice, with the additional consideration of being without justification or excuse. *Wafer*, 509 Mich at 40; *Spears*, 346 Mich App at 517. Defendant was convicted as an aider and abettor, and he essentially challenges the third requirement of aiding and abetting—that he intended the commission of the crime or had knowledge that the principal intended the commission of the crime. *Robinson*, 475 Mich at 6. Defendant asserts that he was "oblivious" to Riley's plan, as demonstrated by his change in emotion and demeanor during his police interview. However, as we concluded in Section II of this opinion, aiding and abetting can be proven if the charged offense was a natural and probable consequence of the intended offense, and a natural and probable consequence of an assault includes murder. *Id*. at 15. Defendant's demeanor did change throughout his police interview. At the beginning, he was calm and quiet. However, he changed his story numerous times, admitted lying several times, and his demeanor changed to loud, excited, and possibly crying, as he ultimately told the police his allegedly truthful story. He repeatedly stated that he did not want to be involved, and did not want to get charged for something he did not do. He also expressed fear of Riley and possible repercussions for speaking to the police.

However, defendant's demeanor during his police interview does not "preponderate[] so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Anderson*, 322 Mich App at 632 (quotation marks and citation omitted). As previously explained, there was plenty of evidence establishing that defendant assisted Riley in the commission of the crime. Defendant admitted that he gave Riley his gun, drove Riley to Quanetta's apartment, accompanied Riley upstairs to the apartment, and drove Riley away from the scene. Any questions regarding defendant's credibility were for the jury to determine, and the jury viewed the entirety of defendant's interrogation video. Therefore, the jury verdict was not against the great weight of the evidence.

## V. DUE PROCESS

Finally, defendant argues that his second-degree murder conviction violates his constitutional right to due process because he was convicted absent evidence of mens rea. We disagree. Because defendant failed to preserve his argument for appellate review, our review is limited to plain error affecting his substantial rights. See *Carines*, 460 Mich at 763-764.

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Implicit in this guarantee is the right to a fair trial, *People v Johnson*, 315 Mich App 163, 179; 889 NW2d 513 (2016), and the requirement that guilt be established beyond a reasonable doubt, *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Defendant asserts that his due-process rights were violated because the jury was instructed that it could convict him if it deemed the murder a natural and probable consequence of the assault on Jackson. In instructing the jury on aiding and abetting, the court stated that defendant "must have intended the commission of the crime alleged or must have known that the other person intended the commission, or that the crime alleged was a natural and probable consequence of the commission of the crime intended." In instructing the jury on second-degree murder, the court stated that the prosecution must prove each of these elements beyond a reasonable doubt:

> First, that the defendant caused the death of Topreze Jackson, that is that Topreze Jackson died as a result of the—shooting [of] Topreze Jackson.

> Second, that the defendant had one of these three states of mind:

> He intended to kill or he intended to do great bodily harm to Topreze Jackson, or he knowingly created a very high risk of death or great bodily [harm] knowing that death or such harm would be a likely result of his actions.

> Third, that the killing was not justified, excused, or done under circumstances that reduced it to a lesser crime.

Defense counsel expressed his satisfaction with the instructions as read by the court. When counsel affirmatively approves jury instructions, any alleged error is waived. *People v Hershey*, 303 Mich App 330, 349-350; 844 NW2d 127 (2013). Thus, to the extent that defendant argues that the jury instruction deprived him of due process, his argument is waived.

Regardless, defendant argues that his conviction is unconstitutional because it violates due process for him to be convicted based on the natural and probable consequences of his actions where he had no intent to commit second-degree murder or assist Riley in committing murder. Defendant cites no caselaw to support this proposition, and relies solely on a law review article, Goldstick, *Accidental Vitiation: The Natural and Probable Consequence of Rosemond v United States on the Natural and Probable Consequence Doctrine*, 85 Fordham L Rev 1281 (2016), of which he merely cites the first sentence of the abstract of the 38-page article. When there is no binding, on-point authority, this Court may consider secondary sources and out-of-state caselaw. See *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 & n 5; 957 NW2d 858 (2020) (adopting the reasoning from out-of-state cases to confront an issue not previously addressed in a published Michigan decision). However, the law review article is not binding on this Court, and "an appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Green*, 313 Mich App 526, 535; 884 NW2d 838 (2015) (quotation marks and citation omitted).

The case that the law review article analyzes, *Rosemond v United States*, 572 US 65; 134 S Ct 1240; 188 L Ed 2d 248 (2014), is binding on this Court, but the United States Supreme Court in *Rosemond* declined to address the natural-and-probable-consequences doctrine. See *id*. at 76 n 7 (citing other secondary authorities that suggest an exception that a person cannot be an accomplice to a crime merely because it was a natural and probable consequence of another crime to which the person was an accomplice, but because the issue was not implicated, the Court did

not address it). Thus, *Rosemond* does not support defendant's assertion that his conviction as an aider and abettor violates due process. As the Michigan Supreme Court stated in *Robinson*, 475 Mich at 15, aiding and abetting can be proven if "the charged offense was a natural and probable consequence of the commission of the intended offense," and "a natural and probable consequence of a plan to assault someone is that one of the actors may well escalate the assault into a murder," *id*. at 11. *Robinson* remains good law and is binding on this Court. See *People v Mitchell*, 428 Mich 364, 369; 408 NW2d 798 (1987) ("An elemental tenet of our jurisprudence, stare decisis, provides that a decision of the majority of justices of this Court is binding upon lower courts."). Therefore, no plain error occurred.

## VI. CONCLUSION

We affirm defendant's second-degree murder conviction, but vacate his sentence for that conviction and remand for resentencing. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani